UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
Monique Minnus, Chiawei Chuang,
Daniel Matos, Crystal M. Matos,                    10-CV-3918 (NG)(RML)
Martha Flores Vazquez,
                        Plaintiffs,                   **MEMORANDUM**
                                                   **OPINION AND ORDER**

       - against -

The Board of Elections in the City
of New York,
                        Defendant.
----------------------------------X
**TOWNES, United States District Judge.**

       Before the Court is a motion for preliminary injunction by

the plaintiffs against the Board of Elections in the City of New

York (the "Board of Elections"). Plaintiffs Monique Minnus

("Minnus"), Chiawei Chuang ("Chuang"), Daniel Matos ("D. Matos")

and Chrystal M. Matos ("C. Matos") seek to place plaintiff Martha

Flores Vazquez ("Vazquez") on the ballot for the Democratic

primary election to be held on September 14, 2010, as a candidate

for the office of Female District Leader of Executive District

Part A, in the 22nd Assembly District of Queens County, in the

state of New York. Plaintiffs claim that The Board of Elections

in the City of New York (the "defendant" or the "Board") violated

their First, Fourteenth, and Fifteenth Amendment Rights under the

United States Constitution by violating the Voting Rights Act, 42

U.S.C. § 1973 and the Civil Rights Act, 42 U.S.C. § 1983.

       Plaintiffs seek declaratory and injunctive relief,

specifically the plaintiffs ask the Court to: (1) declare New

York State Election Law § 2-110 unconstitutional as applied;[1] (2) declare New York State Election Law § 6-102 unconstitutional; (3) declare the defendant's vote on Vazquez's Democratic Party Designating Petition unconstitutional and illegal; (4) to order the defendant to conduct a contested Democratic Party Primary Election for the party position of District Leader; (5) enjoin and restrain the defendant from printing any ballot papers without Vazquez's name; (6) declare Vazquez's Democratic Party Designating Petition valid, proper and legally effective; and (7) place and protect Vazquez's name on the official primary ballot and voting machines for the Democratic Party Primary Election on September 14, 2010.

For the reasons set forth below, plaintiffs' motion is denied.[2]

## BACKGROUND

Plaintiff Vazquez is the current incumbent Female District

---

[1] All plaintiffs are required to comply with Fed. R. Civ. P. 5.1 and Local Civil Rule 24.1 when challenging the constitutionality of a statute in the Eastern District of New York. Specifically, plaintiffs are required to file a Notice of Constitutional Question and serve it upon the Attorney General. Plaintiffs in the instant matter have failed to file the required notice.

[2] Plaintiffs' complaint also does not satisfy Fed. R. Civ. P. 8 requiring that complaints must plead a set of facts that plausibly state a claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).
The complaint is completely devoid of factual contentions and evidentiary support. In addition, the complaint is misleading in as much as it failed to properly account for the events on August 2, 2010 before Justice Cullen. Plaintiffs also did not inform the Court of Justice Cullen's identity or of the fact that Justice Cullen issued a written order invalidating Vazquez's Democratic Party Designating Petition.

Leader of Executive District Part A.[3] Minnus is a registered voter and enrolled Democrat eligible to cast a vote for the party position of District Leader from Executive District Part A and a subscribing witness to the petition. Chuang is a registered voter and enrolled Democrat eligible to cast a vote for the party position of District Leader from Executive District Part A and a subscribing witness to the petition. Chaung is also a member of the Committee to Fill Vacancies. D. Matos and C. Matos are registered voters and enrolled Democrats eligible to cast a vote for the party position of District Leader from Executive District Part A and voter signers of the petition.

On June 8, 2010, plaintiffs began to circulate a Democratic Party Designating Petition ("petition") to place Vazquez on the ballot for the September 14 primary election. On July 12, Vazquez filed her petition with the defendant. On July 29[4], Vazquez commenced a special proceeding pursuant to Article 16 of the New York Election Law in an effort to have her peition validated. (Kitzinger Decl. Opp. Mot. Prelim. Inj. ("Kitzinger Decl.") Exhibit A, August 31, 2010). The Commissioners of Elections in the City of New York held an administrative hearing and ruled that Vazquez's petition was invalid "solely because her

---

[3] Vazquez has been the Female District Leader of Executive District Part A since 2002.

[4] Defendant, in its fact section, states that this special proceeding occurred on July 28, 2010.

petitions did not have the word 'female' next to district
leader." (Grimaldi Aff. Supp. Mot. Prelim. Inj. ("Grimaldi
Aff.") ¶ 4, August 25, 2010). Vazquez moved Justice Lawrence
Cullen in the New York Supreme Court, Queens County, to validate
her petition. (Kitzinger Decl., Exhibit B). The hearing was
held on August 2, 2010. *Id.* Vazquez did not appear for the
hearing. *Id.* Rather, she sent an attorney, not of record, to
court for the "limited purpose of requesting an adjournment of
th[e] matter." *Id.* Justice Cullen noted that "election matters
take precedence over all other proceedings," and that Vazquez
"had ample time to prepare for the matter prior to the August 2,
2010 return date," and therefore denied Vazquez's request. *Id.*
Justice Cullen ordered the parties to proceed, but Vazquez's
lawyer informed the court that he was "neither prepared nor able
to proceed in the election matter." *Id.* Justice Cullen gave
Vazquez one hour to find an election lawyer, which she could not.
(Grimaldi Aff. ¶ 5). So, since Vazquez was not at the court and
had no representation on her behalf, the judge dismissed her
case. *Id.* at ¶ 5; (Kitzinger Decl., Exhibit B).

Plaintiffs commenced this action on August 25, 2010. The
Court signed plaintiffs' Order to Show Cause with a return date
of September 2, 2010 for the hearing on plaintiff's request for a
preliminary injunction. Plaintiffs were ordered to complete

service on the defendant by 5:00 p.m. on August 26, 2010.[5]

## DISCUSSION

*Standard for a Preliminary Injunction*

"[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir.1990). To obtain a preliminary injunction, the moving party must show "that 1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir.1999). However, when a party seeks an injunction to stay governmental action taken in the public interest pursuant to a statutory scheme, the more rigorous showing of likelihood of success on the merits is required. See *Beal v. Stern*, 184 F.3d 117, 122 (2d Cir.1999).

In order to prove a violation of § 1983, plaintiffs must prove, inter alia, that "the conduct complained of ... deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*,

---

[5] At this time, no certificate of service has been filed with the Court.

13 F.3d 545, 547 (2d Cir.1994). In alleging that defendants will deprived them of the right to vote in a primary, plaintiffs are not alleging a violation of the United States Constitution, which does not, *per se*, protect the right to vote in primary elections. *See San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 35 n. 78, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Therefore, to establish a violation of § 1983 in this case, plaintiffs must establish a violation of Section 2 of Voting Rights Act, the First Amendment or the right to Due Process and Equal Protection.

*Voting Rights Act, 42 U.S.C. § 1973*

Section 2 of the Voting Rights Act of 1965, which is codified, as amended, in 42 U.S.C. § 1973, "prohibits any state limitation on the right to vote that has a racially discriminatory result." *Muntaqim v. Coombe*, 366 F.3d 102, 107 (2d Cir.2004). Subsection (a) of the statute provides:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section.

42 U.S.C. § 1973(a). Subsection (b) provides, in pertinent part, that:

> A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by

    subsection (a) of this section in that its members have less
opportunity than other members of the electorate to
participate in the political process and to elect
representatives of their choice.

42 U.S.C. § 1973(b).

    As the Second Circuit has observed, it "is exceedingly
difficult to discern what [§ 1973] means." *Muntaqim*, 366 F.3d at
116; *see Goosby v. Town Bd. of Town of Hempstead, N.Y.*, 180 F.3d
476, 499 (2d Cir.1999) (Leval, J., concurring), *cert. denied*, 528
U.S. 1138, 120 S.Ct. 982, 145 L.Ed.2d 932 (2000). Nonetheless,
the Supreme Court, in examining the history of the statute and
its 1982 amendment, has made clear that plaintiffs are not
required to prove that the contested electoral practice was
adopted or maintained with the intent to discriminate against
minority voters. *See Thornburg v. Gingles*, 478 U.S. 30, 43-44,
106 S.Ct. 2752, 92 L.Ed.2d 25 (1986). It is also "apparent that
§ 1973 does not prohibit all voting restrictions that have a
racially disproportional effect." *Muntaqim*, 366 F.3d at 116
(emphasis in original). Rather, "[t]he essence of a § 2 claim is
that a certain electoral law, practice, or structure interacts
with social and historical conditions to cause an inequality in
the opportunities enjoyed by black and white voters to elect
their preferred representatives." *Gingles*, 478 U.S. at 47.
Therefore, the "right" question in Section 2 cases is "whether as
a result of the challenged practice or structure plaintiffs do
not have an equal opportunity to participate in the political

processes and to elect candidates of their choice." *Id.* at 44
(internal quotations and citations omitted).

In this case, plaintiffs have not even remotely demonstrated
that any of the state statutes or decisions by the defendant have
deprived them of an equal opportunity to vote or participate in
the political process. Plaintiffs argue that the defendant's
denial of Vazquez's decision discriminate against them as they
are all minorities. The allegations in plaintiffs' complaint do
not make out disparate treatment or discriminatory impact.
First, there are no allegations or facts in the complaint to
support an inference that plaintiffs were treated differently
than any other voters in Queens County. The only issue here is
whether the process by which Vazquez's petition was invalidated
is constitutional.

*Due Process and Equal Protection*

In order to prove a due process violation, plaintiffs must
show that a state actor intentionally deprived them of a
constitutional right. *Shannon v. Jacobowitz*, 394 F.3d 90, 95-96
(2d Cir. 2005). Plaintiffs seem to allege that the defendant
will violate their constitutional rights should the primary
election proceed without Vazquez's name on the ballot. New
York's Elections Law states that the "supreme court is vested
with jurisdiction to summarily determine any question of law or
fact arising as to any subject set forth in this article[.]" N.Y.

Elec. L. § 6-100.  Here, the Queens County Supreme Court
determined that Vazquez's petition was invalid.  If Vazquez
disagreed with the Queens County Supreme Court's determination,
she should have appealed the decision to the appropriate
Appellate Division.

In so far as plaintiffs argue that the defendant's
procedures for validating/invalidating designation petitions are
invalid, the Second Circuit has already determined that N.Y.
Elec. L. Art. 16 provides ample opportunity and notice both to be
heard prior determining a petition's validity and to challenge
the Board's determinations.  *Rivera-Powell v. New York City Bd.
of Elec.*, 470 F.3d 458, 467-68 (2d Cir. 2006).  Vazquez was not
deprived of an opportunity to be heard, rather she chose not to
avail herself of the process, and cannot now inappropriately
bring an action in federal court.  *Id; see also Sutera v.
Transportation Sec. Admin*, --- F.Supp.2d ---, 2010 WL 1729095
(E.D.N.Y. Apr. 29, 2010) *citing Monserrate v. New York State
Senate*, 599 F.3d 148, 159-60 (2d Cir.2010) (a hearing is
constitutionally adequate, and there is no violation of due
process, where claimant was afforded, "but declined to avail
himself of," the opportunity for representation, testimony, and
the presentation of evidence).

State courts have "an obligation to avoid arbitrary and
disparate treatment of the members of its electorate."  *Bush v.*

*Gore*, 531 U.S. 98, 105 (2000). Plaintiffs cannot show that Justice Cullen's decision resulted in arbitrary and disparate treatment, as plaintiff declined her right to be heard in the New York State Supreme Court and did not appeal Justice Cullen's decision to the Appellate Division.

*First Amendment*

Plaintiffs claim that by determining that Vazquez's petition was invalid, defendant violated plaintiffs' First Amendment Rights.[6] The Second Circuit determined that where "a plaintiff challenges a Board of Election['s] decision, not as stemming from constitutionality or statutorily invalid law or regulation, but rather as contravening a law or regulation whose validity the plaintiff does not contest, there is no independent burden on First Amendment rights when the state provides adequate procedures by which to remedy the alleged illegality." *Rivera-Powell*, 470 F.3d at 469 (2d Cir. 2006). As explained above, plaintiff did not avail herself of those "procedures by which to remedy the alleged illegality" in state court, and this is not the proper forum to explore those claims.

---

[6] Plaintiffs also appear to claim that Justice Cullen in the New York Supreme Court, Queens County also violated their Due Process rights by invalidating Vazquez's petition. Justice Cullen, however, is not a party to this complaint.

Justice Cullen gave Vazquez ample opportunity to be heard. Vazquez did not attend the hearing, did not acquire representation for the hearing, and did not, after initiating the expedited hearing a week before, even have the courtesy to request an adjournment in advance of the hearing. However, to the extent the Vazquez believes she has a claim against Justice Cullen, the proper method would have been to appeal his decision in state court.

In addition, plaintiffs appear to claim that designating whether a candidate should be listed as either the male or female District Leader is unconstitutional. The Supreme Court held that "limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." *Burdick v. Takushi*, 504 U.S. 428, 440 n. 10, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). "Many restrictions, such as signature requirements, not only do not burden voters' constitutional rights to associate, but are, as a practical matter, necessary to ensure the orderly functioning of elections." *Rivera-Powell*, 470 F.3d at 469 (*citing Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564). N.Y. Elec. L. § 2-110 requires that "[w]hen any such rule provides for equal representation of the sexes, the designating petitions and primary ballots shall list the candidates for such party positions separately by sexes."[7] If collecting a large number of signatures is not burdensome, then neither is a requirement to indicate sex on a designating petition. In any event, the New York State Courts have already determined that Listing one's sex on a petition is far from burdensome, especially where the voters can only elect one male District Leader and one female District

---

[7] Plaintiffs do not argue that equal representation of the sexes is in any way unconstitutional. They only argue that the requirement to designate one's sex on a petition is unconstitutional.

Leader.  (Pls.' Mem. Supp. Ex. 1).

**CONCLUSION**

For the reasons stated above, this Court concludes that plaintiffs have not shown a likelihood of success on the merits.[8] Plaintiffs' motion for a preliminary injunction is, therefore, denied.  The Clerk is directed to transmit a copy of the within to the parties, Judge Gershon and the Magistrate Judge.

SO ORDERED. Dated :  Brooklyn, New York
         September 3, 2010


                              _Sandra L. Townes_
                              United States District Judge

---

[8] Even if the "balance of hardships" standard were applicable to this case, this Court would not grant preliminary injunctive relief.  "[A] federal court cannot lightly interfere with or enjoin a state election," *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003).